UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONNETTE HILTS,

       Plaintiff,                          Case No. 1:16-CV-313

v.                                          HON. GORDON J. QUIST

COMMISSIONER OF SOCIAL
SECURITY.

       Defendant.
_____/

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).

It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was thirty-three years of age on the date of the ALJ's decision. (PageID.66, 140.) She previously obtained a high school education and had been employed as an inspector and fiberglass laminator. (PageID.92, 131–132.) Plaintiff applied for benefits on November 13, 2012, alleging that she had been disabled since December 11, 2010, due to rheumatoid arthritis and depression. (PageID.140, 193–199.) This application was denied on May 10, 2013, after which time Plaintiff requested a hearing before an ALJ. (PageID.155–160.) On July 18, 2014, Plaintiff appeared with her counsel before ALJ JoErin O'Leary for an administrative hearing at which time both Plaintiff and a vocational expert (VE) testified. (PageID.87–138.) On September 3, 2014, the ALJ issued her written decision, concluding that Plaintiff was not disabled. (PageID.66–86.) On February 8, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.31–35.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

Plaintiff's insured status expired on June 30, 2014. (PageID.140.) Accordingly, to be eligible for DIB under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

**ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

The ALJ determined Plaintiff's claim failed at step five. At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period between her alleged disability onset date and her date last insured. (PageID.71.) At step two, the ALJ found that Plaintiff suffered from the severe impairments of inflammatory arthritis and fibromyalgia. (PageID.71–73.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.73.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments to perform:

> light work as defined in 20 CFR 404.1567(b) except she can only occasionally do bilateral handling and fingering. She can only occasionally perform postural maneuvers such as climbing, balancing, stooping, kneeling, crouching, and crawling.

(PageID.73.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (PageID.80.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform work in the following representative jobs: assembler (55,000 positions), machine operator (55,000 national positions), and inspector (55,000 national positions). (PageID.133–134.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.81.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from December 11, 2010, through June 30, 2014, the date last insured. (PageID.56.)

## DISCUSSION

### 1. The ALJ's Analysis of Dr. Tania Lebaron's Opinions.

Beginning in late 2010, Dr. Lebaron treated Plaintiff for her rheumatoid arthritis. During the course of this treatment, Dr. Lebaron completed several temporary work restrictions that

either removed Plaintiff from all work or limited Plaintiff to only certain types of work. (PageID.396, 399–400, 405, 407–408, 413.) On September 28, 2011, in a note similar to previous letters, Dr. Lebaron indicated that Plaintiff "may return to work 10/1/2011. She may work a maximum of 6 hours per day and 20 hours per week." (PageID.395.) Thus, the note indicated that Plaintiff was unable to perform full time work. Moreover, contrary to the previous notes, this note did not indicate an end date regarding the restriction. Sometime later, on May 19, 2014, Dr. Lebaron completed a medical source statement regarding Plaintiff's limitations. Among other things, the doctor indicated Plaintiff could occasionally lift and/or carry twenty-five pound weights, and frequently lift and/or carry ten pound weights. (PageID.693.) Plaintiff could stand or walk about six hours in an eight hour workday, and Dr. Lebaron noted Plaintiff's ability to sit was not affected by her impairments. (PageID.693–694.) Plaintiff also could only occasionally perform activities such as climbing, balancing, kneeling, crouching, crawling, and stooping. (PageID.694.) Finally, she was limited to only occasionally handling and fingering. (PageID.695.) There was no indication, however, that Plaintiff was limited to less than full time work. The ALJ gave "some weight" to the September 29, 2011 opinion and "great weight" to the May 19, 2014, letter. (PageID.79–80.)

In her first and second claim of error, Plaintiff contends that the ALJ should have given controlling weight to the September 28, 2011, opinion under the treating physician rule, and further erred by picking and choosing from Dr. Lebaron's opinions. The Court disagrees.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic

5

techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). It is undisputed Dr. Lebaron qualifies as a treating physician.

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

Plaintiff's contention that the September 28, 2011, opinion was entitled to controlling weight is without merit. This is because Dr. Lebaron's opinion, which at bottom is an opinion that Plaintiff could not sustain full time work, is conjecture, not a medical opinion. *See Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 505 (6th Cir. 2013); *Murray v. Comm'r of Soc. Sec.*, No.

1:10–cv–297, 2011 WL 4346473, at *7 (W.D. Mich. Aug. 25, 2011) (collecting cases). Further, her opinion was not entitled to any weight because the issue of disability is reserved to the Commissioner. *Id.*; *see* 20 C.F.R. §§ 404.1527(d)(1), (3). While controlling weight will not be provided to a treating physician's opinion on an issue reserved to the Commissioner, the ALJ still must 'explain the consideration given to the treating source's opinion(s)." *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (quoting SSR 96–5p). The ALJ gave adequate consideration here, by explaining that the limitations "were not consistent with the medical evidence in the file. Further, Dr. LeBaron failed to provide the objective support, which she relied [on] to make [her] opinion, and the severity of her findings were not supported by her treatment records (Ex. 3F/81)." (PageID.79.) The ALJ correctly noted that the opinion did not contain any explanation for its limitations. This was an appropriate observation. *See* 20 C.F.R. § 404.1527(c)(3) (noting that "[t]he better an explanation a source provides for an opinion, the more weight [the Commissioner] will give that opinion"). Moreover, the opinion was not consistent with Dr. Lebaron's treatment note from the date of her opinion. While it is true, as Plaintiff points out, that the note contains a diagnosis of rheumatoid arthritis, "the mere diagnosis" of a condition" says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). While the note also indicated Plaintiff suffered from joint pain, there was no joint stiffness or swelling. (PageID.583, 585.) On exam, there was no deformity, mass, tenderness, or fractures in any of Plaintiff's upper or lower extremities. She had normal strength, tone, and range of motion. (PageID.584.) In sum, substantial evidence supports the ALJ's decision to assign only some weight to this opinion.

    Plaintiff's second claim of error is somewhat difficult to understand. It appears to largely depend on the success of her prior claim, however, as noted above, the ALJ properly assigned only some weight to that opinion. Plaintiff would apparently prefer that the September 28, 2011, opinion be read together with the May 19, 2014, opinion, but the Court sees no reason why

7

the ALJ could not assign separate weights to these separate opinions given that one was supported by the record and the other was not. The latter opinion makes no reference to the prior opinion, and to read the two together as one is inconsistent on its face with the text of the two opinions. As such, Plaintiff's claim that the ALJ picked an RFC between the two must fail. For one reason, this is because the ALJ's RFC determination is entirely consistent with the May 19, 2014 opinion. But even if it were not, it is the Commissioner who has the final responsibility for deciding an individual's RFC, and as such, when evaluating the claimant's RFC, the ALJ is not required to base RFC findings entirely on a physician's opinion. *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015). Accordingly, this second claim of error also fails.[2]

### 2. The ALJ Complied with SSR 96–7p.

Plaintiff argues that the ALJ "erred by denying Plaintiff benefits because she was too poor to obtain medical treatment." (PageID.814.) This claim turns on the ALJ's factual finding regarding the credibility of Plaintiff's subjective complaints. Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Sec'y*

*of Health & Human Servs*, 833 F.2d 589, 592 (6th Cir.1987). The court does not make its own credibility determinations. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The court's "review of a decision of the Commissioner of Social Security, made through an

---

[2]Though not raised in her statement of errors, Plaintiff tacks on an additional argument that the ALJ's decision is unsupported by substantial evidence because at times the decision uses incorrect pronouns. (PageID.813–814.) The Court finds these typographical errors to be harmless. The ALJ's discussion of the evidence was limited to the evidence in the present record. Thus, the error in question is simply the type of mistake that occurs from time to time when word processing software is utilized to prepare opinions. Plaintiff has identified absolutely no authority to support her call for remand, and the Court finds remand is not appropriate. *See Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (recognizing that the harmless error doctrine is intended to prevent reviewing courts from becoming "impregnable citadels of technicality"); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535–36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ was unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). Accordingly, this argument is also rejected.

administrative law judge, is extremely circumscribed." *Kuhn v. Comm'r of Soc. Sec.*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton*, 246 F.3d at 773; *accord White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

Plaintiff asserts the ALJ erred by failing to consider her inability to afford additional medical treatment. (PageID.697.) SSR 96–7p provides that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." This includes the individual's inability to afford treatment. SSR 96–7p, 1996 WL 374186, at *7–8 (S.S.A. July 2, 1996). The subject of Plaintiff's ability to obtain treatment was squarely addressed by the ALJ:

> It was suggested that financial constraints restricted the claimant's treatment options (Ex. 1F/4; 3F/53; 8F/19/38/45; 10F/8). This may be true to some extent; however, the claimant was able to fund an ongoing nicotine habit, despite her doctor's recommendations that she quit (Ex. 4F/3; 6F/3; 14F/69). Further, it is not clear to me why

9

>the claimant has not availed herself of services from the County Health and Mental Health Departments and other select participating physicians for individuals who qualify based on low income.

(PageID.77.) As this paragraph demonstrates, the ALJ fully complied with the ruling's requirement to consider Plaintiff's ability to afford treatment in observing Plaintiff had not pursued more aggressive treatment. Plaintiff fails to demonstrate how it was error for the ALJ to question why, given the severity of Plaintiff's complaints, Plaintiff did not pursue treatment from sources for those with low incomes.

Plaintiff's next argument—that it was improper for the ALJ to reference her failure to stop smoking—is not well taken. Plaintiff was instructed on several occasions that her decision to continue smoking would only worsen her impairments and symptoms. Plaintiff's subsequent refusal to stop smoking is a legitimate factor to consider in evaluating her credibility. *See, e.g.*, 20 C.F.R. § 404.1529(c)(3); *Marshall v. Comm'r of Soc. Sec.*, No. 13-CV-14255, 2015 WL 777940 at *5 (E.D. Mich. Feb. 24, 2015) ("under Sixth Circuit precedent, the ALJ was permitted to consider Plaintiff's continued smoking habit in evaluating his credibility"). It is also relevant to the consideration of her ability to afford treatment. *Watson v. Comm'r of Soc. Sec. Admin.*, No. 1:12-CV-02483, 2014 WL 1093124, at *14 (N.D. Ohio Mar. 14, 2014). In sum, the Court concludes the ALJ's analysis fully comports with SSR 96–7p.[3] For all these reasons, this claim of error is denied.

### 3. Substantial Evidence Supports the ALJ's Step Five Determination.

At the administrative hearing, the ALJ posed a hypothetical question to the VE incorporating the RFC. After the VE testified that Plaintiff could not perform any of her past

---

[3] Plaintiff's argument also references SSR 82–59. (PageID.814.) This ruling only applies in cases where the ALJ makes a finding that the claimant is disabled and so is inapplicable here. "A precondition to the applicability of SSR 82–59 is that the ALJ determine that the plaintiff was disabled. The ALJ did not determine that the claimant was disabled. Therefore, SSR 82–59 is inapposite to the facts of this case." *Williams v. Comm'r of Soc. Sec.*, No. 3:13 CV 1276, 2014 WL 1406433, at *13 (N.D. Ohio Apr. 10, 2014) (collecting cases); *Hatcher v. Comm'r of Soc. Sec.*, No. 12–cv–13831, 2013 WL 5291622, at * 6 (E.D. Mich. Sept. 19, 2013).

relevant work, the ALJ asked the VE whether someone similar to Plaintiff could perform other work. The VE testified that:

> A. Yes, there is a small portion, that is something the DOT does track, small portion of occupations where no more than occasional handling is required. And, let me get my info here, at light, nothing at medium, nothing at sedentary, but at light.
>
> Q. Okay.
>
> A. Okay, it covers about 39 occupational titles, which compose about 174,000 jobs nationally. What I do is just sort of shrink them all down into the three more representative and just apportion them equally. So, for the production, excuse me, for the assembler production worker, we're at about 55,000 nationally. With an example being mill stenciler, 659.685-026. For the machine operator tender, again about 55,000 nationally. Example is scaling machine operator, 521.685-386. And for the inspector tester, again about 55,000 nationally. An example is belt picker, P-I-C-K-E-R. It is actually selecting stuff off a moving belt, 521.687-022. All light, unskilled.
>
> Q. Is your testimony regarding that hypothetical consistent with the DOT?
>
> A. Yes.

(PageID.134.) Later, Plaintiff's counsel questioned the VE:

> Q. Okay. I just have a question or two about your numbers testimony. Did I understand you to say that the three sample other jobs for hypothetical one, you took from 39 occupational titles?
>
> A. Yes, there are about 39 occupational titles at light, unskilled, for which no more than occasional bilateral handling is required.
>
> Q. So is that an SOC grouping?
>
> A. No, that's actually a review of the selected characteristics of the job.
>
> Q. Where did you get the – but – let me ask it this way. What are you number sources?
>
> A. Pardon me?
>
> Q. What are your sources for the numbers, what publications?
>
> A. Selected Characteristics of Occupations, there's the DOT and then the Selected Characteristics of Occupations, those are our two main resources.
>
> Q. And then they group these light jobs in a set, right? That's where the 39 come from?

11

> A. That's right. Yes, that's it.
>
> Q. So when you said that you were sort of just going to divide, did you just divide the set's full numbers of jobs by 39?
>
> A. Well I could, and then I would have 39 examples to give you. But I do know what the total is. I know what the total number of occupations are, and I know what they add up to nationally. And so for the sake of convenience, instead of giving 39 different examples, from 39 different census groups, I just compacted down to the three of the more common ones and divided them evenly.
>
> Q. The numbers from that source, the Selected Characteristics of Occupations, you go to that source, is it correct, because you yourself are not trained to come up with those numbers, correct?
>
> A. Well that's, yeah, you're telling me the obvious there, counsel. That's what VE's use, the Dictionary of Occupational Titles, which contains thousands of occupations. And I can only say that I've only actually seen a minority of them. For the rest, I rely on those definitions. And then what the typical exertional and non-exertional requirements are of those jobs, which are contained in the Selected Characteristics of Occupations.
>
> Q. So for the representative numbers to the three other sample jobs you gave in response to hypothetical one, I think all the numbers you gave were 55,000 nationally, is that right?
>
> A. Because that's the total number of jobs nationally that are light, unskilled, and require no more than occasional use of the upper extremities.
>
> Q. Okay. Okay. Nothing further.

(PageID.135–137.)

Plaintiff provides two excerpts from Seventh Circuit cases containing critiques of vocational experts and uses those cases to argue the VE's testimony in this case cannot constitute substantial evidence at step five. (PageID.818.) The Seventh Circuit opinions are not binding on this Court, however, and they do not appear to have been followed by other courts within the Sixth Circuit.[4] Moreover, while Plaintiff's counsel examined the VE, he did not ultimately object to the

---

[4] Indeed, one of the excerpts provided by Plaintiff is not even from the court's opinion, as Plaintiff mistakenly states, but is rather a concurrence from Judge Posner. *See Hill v. Colvin*, 807 F.3d 862, 870 (7th Cir. 2015) (Posner, J., concurring).

VE's testimony at the hearing and thus failed to preserve this issue for appeal. "This Court will not review the ALJ's decision with respect to issues not properly raised at the administrative level." *Maple v. Apfel*, 14 F. App'x 525, 537 (6th Cir. 2001). "The Sixth Circuit, along with other courts across the country, have generally recognized that a claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court." *Harris v. Comm'r of Soc. Sec.*, No. 1:11-cv-1290, 2012 WL 4434078 at *3 (N.D. Ohio Sept. 24, 2012) (citing *Hammond v. Chater*, No. 96-3755, 1997 WL 338719 at *3 (6th Cir. June 18, 1997)) (finding the plaintiff's failure to raise objections to the VE's testimony waived the argument on appeal); *cf. Helton v. Comm'r of Soc. Sec.*, No. 99-5736, 2000 WL 658056 at *2 (6th Cir. May 9, 2000) (claimant's failure to dispute the VE's competency at the administrative hearing forfeits the issue for purposes of judicial review). Finally, although the VE's testimony regarding the representative positions may have been confusing, it is perfectly clear that the VE testified Plaintiff was capable of performing the duties of jobs existing in 174,000 positions in the national economy. Plaintiff does not argue that such does not constitute a significant number of jobs. Accordingly, this argument is denied.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision is supported by substantial evidence and therefore will be **AFFIRMED.**

A separate judgment shall issue.


Dated: January 13, 2017                    /s/ Gordon J. Quist
                                           GORDON J. QUIST
                                           UNITED STATES DISTRICT JUDGE